UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NIELSEN CONSUMER LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>LIVERAMP HOLDINGS, INC., et al.,<br><br>    Defendants. | Case No. 24-cv-07355-SVK<br><br>**ORDER DENYING MOTION TO DISMISS**<br><br>Re: Dkt. Nos. 38, 48, 52 |

Plaintiff Nielsen Consumer LLC ("Nielsen") accuses Defendants LiveRamp Holdings, Inc. and LiveRamp, Inc. (collectively, "LiveRamp") of infringing two of its trademarks. *See* Dkt. 1 (the "Complaint"). LiveRamp moves to dismiss. *See* Dkts. 38 (the "Motion"), 44 (the "Opposition"), 49 (the "Reply"). Nielsen and LiveRamp have consented to the jurisdiction of a magistrate judge. *See* Dkts. 16, 35. The Court has determined that the Motion is suitable for resolution without oral argument. *See* Civil Local Rule 7-1(b). After considering the Parties' briefing, relevant law and the record in this action, and for the reasons that follow, the Court **DENIES** the Motion.

**I.     BACKGROUND**

The following discussion of background facts is based on the allegations contained in the Complaint, the truth of which the Court accepts for purposes of resolving the Motion. *See Boquist v. Courtney*, 32 F.4th 764, 772 (9th Cir. 2022).

///

///

///

///

///

### A. Nielsen Owns Two Trademarks In Connection With Its "Label Insight" Platform

Nielsen offers consumer-facing manufacturers and retailers access to its "Label Insight" platform, "a product and service" comprised of "data and tools that help [users] understand consumer behavior in their markets." *See* Complaint ¶¶ 22-23. Across thousands of "product attributes" (*e.g.*, vegan, low sodium, soy free), a user can "identify, among other things, how many consumers are searching for a particular attribute, how many products in the market fail to claim that attribute, the total annual sales related to that attribute, and the percentage of sales growth related to that attribute from the prior year." *See id.* ¶ 29. Nielsen owns two trademarks in connection with its platform. The first is a common-law trademark (the "Common-Law Mark") over the term "LABEL INSIGHT." *See id.* ¶¶ 32-33. The second is a federally registered trademark (the "Federal Mark") over the following composite image and term:

[LABELINSIGHT logo]

*See id.* ¶ 33.

### B. LiveRamp Allegedly Infringes The Marks Through Its Own Data Platform

"LiveRamp is a data connectivity platform that provides tools for managing and connecting customer data across various marketing and advertising ecosystems. . . . [It] offers products and/or data from third-party data companies" to its customers "and then pays th[ose] third-party data compan[ies] for use of their data." *Id.* ¶¶ 11, 13. One of these third-party data companies is Circana, LLC ("Circana"). Circana competes with Nielsen in the market for "providing retail/product data and analytics" to consumer-facing manufacturers and retailers. *See id.* ¶ 38. LiveRamp "collaborate[s]" with Circana "to make Circana's deterministic data available within LiveRamp's data platform." *See id.* ¶ 12.

When LiveRamp provides this data to users on its platform, it presents the following phrase: "IRI Attribute Audiences **Powered By Label Insight**."[1] *See id.* ¶¶ 39-40 (emphasis added). Nielsen has not, however, authorized LiveRamp to use the Common-Law Mark or the

---

[1] "IRI" appears to refer to Circana. *See* Complaint ¶ 8.

2

Federal Mark, both of which include the term "LABEL INSIGHT." *See id.* ¶¶ 41, 43. Nielsen accordingly brings this action to recover for LiveRamp's alleged infringement of its marks.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court must dismiss a complaint if it "fail[s] to state a claim upon which relief can be granted." To survive a Rule 12(b)(6) motion, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This facial-plausibility standard requires a plaintiff to allege facts resulting in "more than a sheer possibility that a defendant has acted unlawfully." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

In ruling on a motion to dismiss, a court may consider only "the complaint, materials incorporated into the complaint by reference, and matters [subject to] judicial notice." *See UFCW Loc. 1500 Pension Fund v. Mayer*, 895 F.3d 695, 698 (9th Cir. 2018) (citation omitted). A court must also presume the truth of a plaintiff's allegations and draw all reasonable inferences in their favor. *See Boquist*, 32 F.4th at 773. However, a court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008 (9th Cir. 2018) (citation omitted).

If a court grants a motion to dismiss, it may exercise discretion to grant or deny leave to amend the complaint, and it "acts within its discretion to deny leave to amend when amendment would be futile, when it would cause undue prejudice to the defendant, or when it is sought in bad faith." *See Nat'l Funding, Inc. v. Com. Credit Counseling Servs., Inc.*, 817 F. App'x 380, 383 (9th Cir. 2020) (citation omitted).

///
///
///
///
///
///
///

3

### III. DISCUSSION

Nielsen brings four claims against LiveRamp (*see* Complaint ¶¶ 51-92):

- Trademark infringement in violation of the Lanham Act.
- Unfair competition in violation of the Lanham Act.
- Common-law trademark infringement and unfair competition.
- Violation of the California Unfair Competition Law.

All four claims survive the Motion.

#### A. Nielsen States Lanham Act Claims Of Trademark Infringement And Unfair Competition

To succeed on a claim of trademark infringement, a plaintiff "must show that: (1) it has a valid, protectable trademark, and (2) that [the defendant's] use of the mark is likely to cause confusion." *See Applied Info. Scis. Corp. v. eBay, Inc.*, 511 F.3d 966, 969 (9th Cir. 2007) (citation omitted). Where, as here, a plaintiff predicates an unfair-competition claim on alleged trademark infringement, the same two-part analysis applies to the unfair-competition claim. *See Lodestar Anstalt v. Bacardi & Co.*, 31 F.4th 1228, 1245 (9th Cir. 2022). LiveRamp argues that Nielsen's allegations satisfy neither of the two required elements, thereby requiring dismissal of the Lanham Act claims, but the Court disagrees.

##### 1. Nielsen Sufficiently Alleges That The Common-Law Mark Is Valid And Protectable

"To be valid and protectable, a mark must be 'distinctive.'" *Zobmondo Ent., LLC v. Falls Media, LLC*, 602 F.3d 1108, 1113 (9th Cir. 2010). "Marks are classified into one of five categories of increasing distinctiveness that warrant increasing protection: (1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, and (5) fanciful." *Ironhawk Techs., Inc. v. Dropbox, Inc.*, 2 F.4th 1150, 1162 (9th Cir. 2021) (quotation marks and citation omitted). This increasing level of distinctiveness proceeds as follows:

> Suggestive, arbitrary, and fanciful marks are considered inherently distinctive and are automatically entitled to federal trademark protection because their intrinsic nature serves to identify a particular source of a product. Generic marks are not eligible for trademark protection. Merely descriptive marks are somewhere in-between; although they are not inherently distinctive and are therefore not entitled to automatic trademark protection, a merely descriptive mark can become protectable if it has acquired distinctiveness as used on or in connection with the

4

> applicant's goods in commerce. This acquired distinctiveness is referred to as secondary meaning.

*Zobmondo*, 602 F.3d at 1113 (quotation marks and citations omitted).

LiveRamp argues that the Common-Law Mark does not constitute a valid and protectable mark because it is either generic or descriptive without secondary meaning and therefore is not distinctive. *See* Motion at 8-14. Nielsen counters that it offers allegations sufficient to classify the Common-Law Mark as suggestive and therefore inherently distinctive. *See* Opposition at 10-11. In resolving this disagreement, the Court notes that "[w]hether a mark is distinctive is a question of fact ill-suited for determination on a motion to dismiss." *Orgain, Inc. v. N. Innovations Holding Corp.*, No. 18-cv-01253-JLS, 2018 WL 7504409, at *3 (C.D. Cal. Dec. 6, 2018) (citations omitted). "While some courts have decided fact-specific issues regarding trademark protection at the pleading stage, they generally have done so only where the complaint suffers from a complete failure to state a plausible basis for trademark protection." *Pinterest Inc. v. Pintrips Inc.*, 15 F. Supp. 3d 992, 998-99 (N.D. Cal. 2014) (citations omitted). Thus, the inquiry turns on whether Nielsen "allege[s] facts sufficient to support a plausible inference of distinctiveness." *See Orgain*, 2018 WL 7504409, at *3 (citations omitted). Nielsen has done so.

"[T]he line between descriptive and suggestive marks is elusive . . . ." *Ironhawk*, 2 F.4th at 1162 (citation omitted). To draw that line, courts in the Ninth Circuit apply two tests. "The first, and clearly the most-used, test is known as the **imagination test**, and asks whether imagination or a mental leap is required in order to reach a conclusion as to the nature of the product being referenced." *Zobmondo*, 602 F.3d at 1115 (emphasis added) (quotation marks and citation omitted). Under this test, "[i]f a consumer must use imagination or any type of multistage reasoning to understand the mark's significance, then the mark does not *describe* the product's features, but *suggests* them." *Kendall-Jackson Winery, Ltd. v. E & J Gallo Winery*, 150 F.3d 1042, 1047 n.8 (9th Cir. 1998). "[O]nly a small exercise of imagination" is required. *See, e.g.*, *Rearden LLC v. Rearden Com., Inc.*, 683 F.3d 1190, 1211 (9th Cir. 2012). The second test is known as the **competitors' needs test** and concerns the degree to which competitors require the mark to identify their offerings:

> If competitors have a great need to use a mark, the mark is probably descriptive; on the other hand, if the suggestion made by the mark is so remote and subtle that it is really not likely to be needed by competitive sellers to describe their goods or services[,] this tends to indicate that the mark is merely suggestive. The competitors' needs test is related to the imagination test, because the more imagination that is required to associate a mark with a product or service, the less likely the words used will be needed by competitors to describe their products or services.

See *Zobmondo*, 602 F.3d at 1117 (quotation marks and citations omitted).

Applying both tests here, the Court concludes that the Common-Law Mark is suggestive under Nielsen's allegations.

***First***, reaching an understanding that LABEL INSIGHT refers to a platform that offers data and analysis about consumer goods across product attributes requires at least some imagination, as references to labels or insights do not automatically conjure an image of Nielsen's service. *See, e.g.*, *Lahoti v. Vericheck, Inc.*, 636 F.3d 501, 506 (9th Cir. 2011) (affirming finding that "VERICHECK" is suggestive because "consumers must separate 'veri' from 'check' and reason that 'veri' is short for 'verification services'"); *Hush Hush Sound, Inc. v. H & M Hennes & Mauritz LP*, No. 17-cv-07668-RGK, 2018 WL 4962086, at *4 (C.D. Cal. Jan. 26, 2018) ("Because of its similarity to the word 'classics,' 'Classixx' can be construed as at least somewhat evocative of Plaintiffs' style of music. Associating 'Classixx' with Plaintiffs' musical group nevertheless requires some imagination. Thus, Plaintiffs' mark is best categorized as suggestive."). This satisfies the imagination test.

***Second***, Nielsen's competitors (or those offering related services, like LiveRamp) can easily describe their offerings without using the term LABEL INSIGHT, as nothing about the provision of data and analysis concerning consumer goods demands a reference to labels or insights. *See, e.g.*, *Zobmondo*, 602 F.3d at 1117 ("[I]t's difficult to say that Zobmondo necessarily needs to use 'WOULD YOU RATHER . . . ?' for its version of the board game of bizarre or humorous choices."); *cf. Summit Ice Melt Sys., Inc. v. HotEdge, LLC*, No. 24-cv-00066-ART, 2025 WL 305202, at *3 (D. Nev. Jan. 27, 2025) ("It is not obvious how a competitor could indicate that their products are meant for construction professionals without using either 'professional' or 'pro' in the product title"). This satisfies the competitors' needs test.

6

Thus, Nielsen sufficiently alleges that the Common-Law Mark is suggestive and therefore inherently distinctive. Tellingly, nowhere in the Reply does LiveRamp address Nielsen's argument about the Common-Law Mark being suggestive. It does argue that Nielsen's allegations demonstrate that the Common-Law Mark is descriptive (and therefore not inherently distinct). *See* Reply at 9 (citing Complaint ¶¶ 23-24, 28-30, 43). But its cited allegations do not at all indicate that the term LABEL INSIGHT merely describes Nielsen's platform. *See One Indus., LLC v. Jim O'Neal Distrib., Inc.*, 578 F.3d 1154, 1164 (9th Cir. 2009) ("Descriptive terms directly describe the quality or features of the product." (citation omitted)).

As for LiveRamp's remaining arguments about the Common-Law Mark being generic or descriptive without secondary meaning (and therefore not distinctive), the Court declines to address them in light of its determination that Nielsen sufficiently alleges that the Common-Law Mark is suggestive. Again, the issue presents a factual inquiry which LiveRamp may more appropriately broach at a later stage of the case.[2] *See also Advertise.com, Inc. v. AOL Advert., Inc.*, 616 F.3d 974, 977 (9th Cir. 2010) ("Whether a mark is generic is a question of fact." (citation omitted)); *Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.*, 419 F.3d 925, 930 (9th Cir. 2005) ("[T]he question of secondary meaning is one of fact." (citation omitted)).

        2.      Nielsen Sufficiently Alleges A Likelihood Of Confusion Between The Federal Mark And LiveRamp's Use Of The Phrase "IRI Attribute Audiences Powered By Label Insight"

In evaluating likelihood of confusion, courts in the Ninth Circuit consider eight "*Sleekcraft*" factors:

---

[2] In connection with its generic and secondary-meaning distinctiveness arguments, LiveRamp requests that the Court consider several documents from outside the Complaint. *See* Motion at 8-14; Dkt. 39 (request for judicial notice). Even if the Court considered those documents, doing so would not change the fact that Nielsen has sufficiently alleged that the Common-Law Mark is suggestive and therefore inherently distinctive. At best, LiveRamp's documents create a factual dispute about the Common-Law Mark's distinctiveness which the Court will not resolve at the pleading stage. Accordingly, the Court **DENIES** LiveRamp's request as moot. *See, e.g.*, *Sylabs, Inc. v. Rose*, No. 23-cv-00849-SVK, 2023 WL 8813517, at *4 (N.D. Cal. Dec. 19, 2023) ("Having reviewed the RJNs, the Court concludes that its resolution of the Motions would not change even if it granted the RJNs and considered the documents in question. The Court will therefore deny the RJNs as moot." (citation omitted)).

7

>(1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines.

See Ironhawk, 2 F.4th at 1160 (citation omitted); see also AMF Inc. v. Sleekcraft Boats, 599 F.2d 341, 348-49 (9th Cir. 1979). LiveRamp focuses its argument on the similarity-of-the-marks factor as applied to the Federal Mark.³ See Motion at 14-17. The Court considers three "general principles" in evaluating this factor: "First, [s]imilarity is best adjudged by appearance, sound, and meaning. Second, the marks must be considered in their entirety and as they appear in the marketplace. Third, similarities are weighed more heavily than differences." See Ironhawk, 2 F.4th at 1164 (quotation marks and citations omitted).

At the pleading stage, consideration of these principles allows the Court to reasonably infer a likelihood of confusion; the Federal Mark contains the term "LABEL INSIGHT," which is the exact same term used by LiveRamp on its platform, and both uses of the term appear in the context of a market for data analytics of consumer goods. LiveRamp insists that the Federal Mark's graphic component (  ) constitutes the "dominant" portion of the mark, thereby rendering it dissimilar to LiveRamp's use of the phrase "IRI Attribute Audiences Powered By Label Insight," which does not include the graphic. See Motion at 14-17; see also id. at 17 ("It is nonsensical to suggest that consumers would pick out the less distinctive word component of the [Federal] Mark while discarding the prominent design portion as non-source identifying."). But the Court must weigh similarities more heavily than such differences. In any event, at the pleading stage the Court can neither agree that the graphic component dominates nor speculate as to which portion of the mark would more captivate a consumer. For the same reason, the Court

---

³ Although LiveRamp refers to both the Common-Law Mark and the Federal Mark in its section heading for this confusion argument in the Motion, it does not analyze any likelihood of confusion concerning the Common-Law Mark. See Motion at 14-17. The Court, therefore, understands this argument to concern the Federal Mark only. In any event, the Court's analysis in this section applies equally well to any confusion stemming from LiveRamp's alleged infringement of the Common-Law Mark.

8

cannot conclude as a matter of law that LiveRamp's inclusion of the two-word term "Label Insight" within a seven-word phrase insulates it against a plausible allegation of confusion at the pleading stage. *See* Reply at 11-12. It also does not matter that LiveRamp may have used the phrase "IRI Attribute Audiences Powered By Label Insight" under a mistaken belief "that it had the contractual authority to do so via its relationship with Circana" (*see id.* at 5); Nielsen expressly alleges that it never authorized LiveRamp to use the marks or Circana to provide LiveRamp with Nielsen's data. *See* Complaint ¶ 9.

Ultimately, "[t]he existence of consumer confusion is a fact-intensive analysis that does not lend itself to a motion to dismiss." *Applied Underwriters, Inc. v. Lichtenegger*, 913 F.3d 884, 897 (9th Cir. 2019) (citation omitted). "While the Court is not completely precluded from ruling on questions of consumer perception as a matter of law if the evidence is so one-sided that no doubt exists about the answer, this is not such a circumstance. [Nielsen] ha[s] adequately alleged the possibility that a consumer could be confused . . . . " *Edwards Lifesciences Corp. v. Meril Life Scis. Pvt. Ltd.*, No. 19-cv-06593-HSG, 2021 WL 1312748, at *2 (N.D. Cal. Apr. 8, 2021) (citation omitted).

### 3. Nielsen's Allegations Do Not Support A Reasonable Inference That LiveRamp Engaged In Nominative Fair Use Of The Marks

There exists "a class of cases where the use of the trademark does not attempt to capitalize on consumer confusion or to appropriate the cachet of one product for a different one." *See New Kids on the Block v. News Am. Publ'g, Inc.*, 971 F.2d 302, 307-08 (9th Cir. 1992). In these cases, "a defendant has used the plaintiff's mark to describe **the plaintiff's** product." *See Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1151 (9th Cir. 2002) (emphasis added). "[S]o long as it's unlikely to cause confusion as to sponsorship or endorsement" by the owner of the mark, such "nominative fair use . . . is, by definition, not infringement" because it constitutes "truthful use of a mark." *See Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1175-77 (9th Cir. 2010). Where a defendant raises a nominative-fair-use defense, a court must conduct a different confusion analysis in place of evaluating confusion under the *Sleekcraft* factors. *See Playboy Enters., Inc. v. Welles*, 279 F.3d 796, 801 (9th Cir. 2002). Thus, the Court should not treat

nominative fair use as an affirmative defense for LiveRamp to establish at a later stage of the case. *See Toyota*, 610 F.3d at 1182; *Comparion Med. Analytics, Inc. v. Prime Healthcare Servs., Inc.*, No. 14-cv-03448-SVW, 2015 WL 12746228, at *3 (C.D. Cal. Apr. 14, 2015).

LiveRamp argues that if Nielsen sufficiently alleges any valid, protectable ownership over the Common-Law Mark or the Federal Mark, then LiveRamp' use of the phrase "IRI Attribute Audiences Powered By Label Insight" constitutes nominative fair use, thereby shielding it from any claims of infringement. *See* Motion at 18-21. A three-part test governs the analysis:

> First, the product or service in question must be one not readily identifiable without use of the trademark; second, only so much of the mark or marks may be used as is reasonably necessary to identify the product or service; and third, the user must do nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder.

*See Lichtenegger*, 913 F.3d at 893 (citation omitted). This "analysis typically involves questions of law and fact, and determination on a motion to dismiss is premature." *See Elec. Arts, Inc. v. Textron Inc.*, No. 12-cv-00118-WHA, 2012 WL 3042668, at *5 (N.D. Cal. July 25, 2012) (citation omitted); *see also Lichtenegger*, 913 F.3d at 897 ("[I]t is a rare situation in which granting a motion to dismiss is appropriate when a case involves questions of consumer confusion . . . ." (quotation marks and citation omitted)). "An exception exists where simply looking at the work itself, and the context in which it appears, demonstrates how implausible it is that a viewer will be confused into believing that the plaintiff endorsed the defendant's work." *Rearden LLC v. Walt Disney Co.*, 293 F. Supp. 3d 963, 976 (N.D. Cal. 2018) (citation omitted).

The Court cannot say as a matter of law that it is implausible that a user of LiveRamp's platform who views the phrase "IRI Attribute Audiences Powered By Label Insight" would be confused into believing that Nielsen has endorsed LiveRamp's service; Nielsen owns two marks containing the term "LABEL INSIGHT" (one of which is a mark for the term itself), both companies operate in the market for consumer data and LiveRamp's use of the phrase appears on its platform through which users may access that data. *See, e.g.*, *id.* at 977 (where plaintiff alleges its exclusive association with "MOVA mark," denying motion to dismiss on grounds of nominative fair use because "[i]t is plausible that a viewer might believe that [the plaintiff]

10

endorsed [a movie] after watching the film's credits and seeing the MOVA mark"). LiveRamp insists that Nielsen fails to allege facts "to suggest some connection" between its platform and Nielsen, such as Nielsen's "design elements." *See* Motion at 21. But even in the absence of Nielsen's design elements, LiveRamp's use of the phrase "IRI Attribute Audiences **Powered By Label Insight**," in the context alleged, could plausibly suggest endorsement.[4]

### B. Nielsen's Remaining Claims Survive

In requesting dismissal of Nielsen's remaining claims, LiveRamp argues only that those claims rise and fall with the Lanham Act claims. *See id.* at 21-22. Because the Court declines to dismiss the Lanham Act claims, it declines to dismiss Nielsen's remaining claims.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** the Motion. Because the Court denies the Motion, it also **DENIES AS MOOT** LiveRamp's motion to stay discovery pending resolution of the Motion and Nielsen's request to file a sur-reply. *See* Dkts. 48, 52. The Parties shall appear for an initial case-management conference on **April 8, 2025**, and shall file a joint case-management statement by **April 1, 2025**.

**SO ORDERED.**

Dated: February 25, 2025

_____
SUSAN VAN KEULEN
United States Magistrate Judge

---

[4] In raising the nominative-fair-use defense, LiveRamp requests that the Court consider a complaint filed by Nielsen against Circana in the United States District Court for the Northern District of Illinois. *See* Motion at 19; Dkt. 39 (request for judicial notice). Even if the Court considered that complaint, doing so would not change the fact that Nielsen has sufficiently alleged that LiveRamp's conduct suggests endorsement by Nielsen. Accordingly, the Court **DENIES** LiveRamp's request as moot. *See also* Note 2, *supra*.