1

2

3

4                    UNITED STATES DISTRICT COURT

5                  NORTHERN DISTRICT OF CALIFORNIA

6

7    NIELSEN CONSUMER LLC,                    Case No.  24-cv-07355-SVK

8              Plaintiff,

9         v.                                  **ORDER DENYING MOTION TO
                                              TRANSFER**
10   LIVERAMP HOLDINGS, INC., et al.,         Re: Dkt. No. 56

11             Defendants.

12        Plaintiff Nielsen Consumer LLC ("Nielsen") accuses Defendants LiveRamp Holdings, Inc

13   and LiveRamp, Inc. (collectively, "LiveRamp") of infringing two of its trademarks.  Dkt. 1.  (the

14   "Complaint").  This Court previously denied LiveRamp's motion to dismiss the Complaint.  Dkt.

15   53.  Now before the Court is LiveRamp's motion to transfer the case to the Northern District of

16   Illinois (the "Motion").  Dkt. 56 ("Mot.").  Nielsen opposes the Motion.  Dkt. 60 ("Opp.").  At the

17   heart of the Parties' dispute are two issues:  (1) Nielson's companion action against Circana, LLC

18   ("Circana") in the Northern District of Illinois, alleging, *inter alia*, Circana's infringement of the

19   same trademark;  and (2) Circana's relationship with LiveRamp.  Mot. at 1-2, 5;  Opp. at 2;  *see*

20   *Nielsen Consumer LLC v. Circana, LLC*, No. 1:24-cv-10946 (N.D. Ill.) (the "*Circana* Action").

21   The Motion came on for hearing on May 20, 2025.  Having considered the Parties' submissions

22   and oral arguments, the relevant law and the record in this action, the Court hereby **DENIES**

23   LiveRamp's motion to transfer.[1]

24

---

25   [1] Nielsen also filed an Administrative Motion for Leave to File a Sur-Reply as to the Motion,
26   which LiveRamp opposes.  Dkts. 66, 68-69.  The Court agrees with LiveRamp that Nielsen's sur-
     reply merely seeks to distinguish case law cited by LiveRamp in its reply and that, while the case
27   law cited by LiveRamp was new, the argument was not.  *See* Dkt. 69 at 1-2.  Distinguishing case
     law is not a proper use of a sur-reply under this District's Local Rules, (*see* N.D. Cal. L.R. 7-
28   3(d)(1)-(2)), and, moreover, counsel for Nielsen had the opportunity to distinguish the cases
     during oral argument.  Accordingly, the Court **DENIES** the administrative motion.

## I.     BACKGROUND

The background of the Parties' dispute is set forth in this Court's prior order.  *See* Dkt. 53 at 1-3.  As before, the background herein is drawn from the allegations contained in the Complaint, taken as true.[2]  In short, Nielsen offers consumer-facing manufacturers and retailers access to its "Label Insight" platform, "a product and service" comprised of "data and tools that help [users] understand consumer behavior in their markets."  *See* Compl., ¶¶ 22-23;  Dkt. 55 ("Answer"), ¶¶ 22-23.  Two trademarks relating to the "Label Insight" data platform (the "Label Insight Marks") are at issue in this case.  *See* Compl., ¶¶ 29, 32-33;  Answer, ¶¶ 29, 32; *but see* Answer, ¶ 33 (alleging that on February 3, 2025, Circana filed for cancellation of Nielsen's federal Label Insight Mark, "which could result in revocation of the registration").

As relevant to the Motion, LiveRamp is a Delaware corporation with its principal place of business in San Francisco, California.  Compl., ¶¶ 17-18.  "LiveRamp is a data connectivity platform," essentially a middleman that "offers products and/or data from third-party companies" to its customers "and then pays th[ose] third-party company[ies] for use of their data."  *See* Compl., ¶¶ 11, 13;  Answer, ¶¶ 11, 13.  One such third party is Circana.  Compl., ¶ 12;  Answer, ¶ 12.  Circana is a competitor of Nielsen in the market for data analytics, (*see* Compl., ¶ 38; Answer, ¶ 38), and LiveRamp—for the purposes of the Motion—"collaborate[s]" with Circana "to make Circana's deterministic data available within LiveRamp's data platform," (Compl., ¶ 12; *but see* Answer, ¶ 12)[3].

LiveRamp makes its data offerings, including those from Circana, available on its website, which is available across the United States.  *See* Compl., ¶ 12;  Dkt. 62 ("Reply") at 5.  The Parties

---

[2] "In determining whether to grant a motion to transfer venue, 'uncontroverted allegations in [a] plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in [the] plaintiff's favor.'"  *All-Tex, Inc. v. Aramsco, Inc.*, No. 18-cv00410-DSF (EX), 2018 WL 11473762, at *1 (C.D. Cal. Mar. 14, 2018) (quoting *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1129 (9th Cir. 2010), *abrogated on other grounds, see Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017) (explaining the impact of *Walden v. Fiore*, 571 U.S. 277 (2014))).

[3] LiveRamp pleads that its "website and Circana's press release speak[s] for themselves" and "denies any allegations inconsistent with them," but LiveRamp does not otherwise deny the Nielsen's allegation.  Answer, ¶ 12.  Given LiveRamp's reliance on paragraph 12 both in its brief and at oral argument, the Court will treat this allegation as uncontested for the purpose of resolving the motion to transfer.  *See* Dkt. 62 at 3-5.

1    agree that LiveRamp and Circana also have a contractual relationship for the provision of data,

2    although the contract itself is not a part of the record in this action.  Opp. at 7;  Reply at 1, 5.

3    Further, according to allegations in the *Circana* Action, (*Circana* Action, Dkt. 31 ("*Circana* Am.

4    Compl.")), Circana is a Delaware company with its principal place of business in Chicago,

5    Illinois.  *Circana* Am. Compl., ¶ 42.[4]

6    **II.     LEGAL STANDARD**

7           "For the convenience of parties and witnesses, in the interest of justice, a district court may

8    transfer any civil action to any other district or division where it might have been brought."  28

9    U.S.C. § 1404(a).  "The Court's transfer inquiry proceeds in two steps. First, the Court determines

10   'whether the transferee district was one in which the action might have been brought by the

11   plaintiff.'"  *California v. Bureau of Land Mgmt.*, No. 18-cv-00521-HSG, 2018 WL 3439453, at *2

12   (N.D. Cal. July 17, 2018) (quoting *Hoffman v. Blaski*, 363 U.S. 335, 343-44 (1960)).  Only if so,

13   "the Court conducts an individualized case-specific analysis of convenience and fairness."  *Id.*,

14   (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quotations omitted)).

15          As to the first step, a "transferee court must: (1) be able to exercise personal jurisdiction

16   over the defendants, (2) have subject matter jurisdiction over the claim, and (3) be a proper

17   forum."  *Albertson v. Monumental Life Ins. Co.*, No. 08-cv-05441-RMW, 2009 WL 3870301, at

18   *2 (N.D. Cal. Nov. 16, 2009) (citing *Hoffman*, 363 U.S. at 343-44).  "The moving party bears the

19   burden of showing that jurisdiction and proper venue would exist in the district to which a transfer

20   is requested."  *Wireless Consumers All., Inc. v. T-Mobile USA, Inc.*, No. 03-cv-03711-MHP, 2003

21   WL 22387598, at *1 (N.D. Cal. Oct. 14, 2003).

22   **III.    DISCUSSION**

23          The Parties focus their arguments on two issues:  whether the Northern District of Illinois

24   would have had personal jurisdiction over LiveRamp, under step one;  and the various case-

25   specific factors of convenience and fairness of step two.  *See* Dkts. 56, 60, 62.  As an initial

26   matter, the Court may deny the Motion if it finds any of the first step requirements (personal

27

28   [4] Neither Party disputes that Circana has its principal place of business in Illinois as pleaded by
     Nielsen in the *Circana* Action.  The Court thus accepts this fact as uncontested.

United States District Court
Northern District of California

1    jurisdiction, subject matter jurisdiction and venue) lacking.  28 U.S.C. § 1404(a).   Additionally, if

2    any of these first step requirements are not met, the Court need not reach the second step of the

3    transfer inquiry.  *See Hoffman*, 363 U.S. at 341–42 (1960).  Accordingly, because the Court

4    determines that LiveRamp has failed to show that the Northern District of Illinois had personal

5    jurisdiction at the time suit was brought, the Court need not address any of the other issues raised

6    by the Parties.

7            Whether the case "might have been brought" in a particular district implicates the

8    personal-jurisdiction precedent of circuit into which a party seeks to transfer the case.  *See* 28

9    U.S.C. § 1404(a);  *see also, e.g.*, *Shenzhen Aji Fashion Tech. Co. v. WhaleCo Inc.*, No. 23-cv-

10   14043, 2024 WL 2845974, at *3 (N.D. Ill. June 5, 2024) (citing both First and Seventh Circuit law

11   to determine whether the suit might have been brought in the District of Massachusetts).  "Absent

12   a party's consent to personal jurisdiction, a court must secure either general or specific

13   jurisdiction."  *Vanegas v. Signet Builders, Inc.*, 113 F.4th 718, 722 (7th Cir. 2024) (internal

14   citation omitted);  *see also Ratha v. Phatthana Seafood Co.*, 35 F.4th 1159, 1170-71 (9th Cir.

15   2022).  Here, the Parties do not dispute that the Northern District of Illinois does not have general

16   jurisdiction over LiveRamp.  Reply at 3 n.2.  As to specific jurisdiction, in the Seventh Circuit,

17   there are "three requirements for personal jurisdiction in th[e] [tort] context:  (1) intentional

18   conduct (or 'intentional and allegedly tortious conduct);  (2) expressly aimed at the forum state;

19   (3) with the defendant's knowledge that the effects would be felt—that is, the plaintiff would be

20   injured—in the forum state."  *Tamburo v. Dworkin*, 601 F.3d 693, 703 (7th Cir. 2010)

21   ("[e]xtracting these requirements from *Calder* [*v. Jones*, 465 U.S. 783 (1984)]…");  *accord*

22   *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1156 (9th Cir. 2006) (deriving the same three factors,

23   phrased somewhat differently, from *Calder*).

24   ////

25   ////

26   ////

27   ////

28   ////

United States District Court
Northern District of California

4

**A.    LiveRamp Cannot Satisfy Section 1404(a) by Consenting to Jurisdiction**

LiveRamp first argues that personal jurisdiction is proper because it "is willing to consent to jurisdiction in the Northern District of Illinois to permit" this action and the *Circana* Action "to be consolidated." Mot. at 2, 5. The Supreme Court squarely rejects this argument. "[T]he power of a District Court under [Section] 1404(a) to transfer an action to another district [does] not [depend] upon the wish or waiver of the defendant[;]" a defendant cannot waive jurisdiction or venue for the purpose of a Section 1404(a) transfer. *Hoffman*, 363 U.S. at 343-44. Accordingly, LiveRamp's willingness to consent is insufficient.

**B.    The Northern District of Illinois Did Not have Specific Personal Jurisdiction Over LiveRamp**

Turning to the three requirements extracted by the Seventh Circuit from *Calder*, LiveRamp fails to demonstrate that the Northern District of Illinois had personal jurisdiction over LiveRamp at the time the suit was brought. As for the first requirement, the Parties do not dispute that that LiveRamp's alleged trademark infringement is "intentional and allegedly tortious." *See, generally*, Opp. at 6-8; Reply at 3-5. Accordingly, this Court focuses on the second and third requirements.

**1.    LiveRamp's Conduct Was Not Expressly Aimed at Illinois**

LiveRamp points to two contacts that it contends show its conduct was expressly aimed at Illinois: (1) that it "offers its services across the United States, including Illinois, and [(2)] [that it] also has a contractual relationship with Circana – an Illinois resident." Mot. at 5. Nielsen challenges that "neither offering services nationwide (presumably via the Internet), nor merely entering a contract with a company that happens to be headquartered in Illinois, is sufficient to confer specific jurisdiction," citing both Seventh and Ninth Circuit authority. Opp. at 7-8. The Court agrees with Nielsen that neither contact, standing alone, is sufficient to show that LiveRamp expressly aimed its conduct at Illinois. *Matlin v. Spin Master Corp.*, 921 F.3d 701, 707 (7th Cir. 2019) (website: "If the defendant merely operates a highly interactive website, that is accessible from, but does not target, the forum state, then the defendant may not be haled into court in that state without offending the Constitution." (cleaned up)); *Pebble Beach Co.*, 453 F.3d at 1156 (9th

1    Cir. 2006) (<u>website:</u>  "Caddy's actions were not expressly aimed at California [where the] only

2    acts identified by Pebble Beach as being directed at California are the website and the use of the

3    name 'Pebble Beach' in the domain name."); *Citadel Grp. Ltd. v. Washington Reg'l Med. Ctr.*,

4    536 F.3d 757, 761 (7th Cir. 2008) (<u>contract:</u>  "[A] contract between a state resident and an out-of-

5    state defendant alone does not automatically establish sufficient minimum contacts."); *Picot v.*

6    *Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015) (<u>contract:</u>  "[A] contract alone does not automatically

7    establish minimum contacts in the plaintiff's home forum.").

8         In reply, LiveRamp neither distinguishes these cases nor argues that either contact,

9    standing alone, is sufficient.  *See* Reply at 3-4.  Rather, LiveRamp argues that it is "the

10   combination of those two [contacts], *i.e.*, the availability of a website in the forum state and the

11   existence of a contract with a party in the forum state" that is sufficient to confer personal

12   jurisdiction.  Reply at 4-5 (internal quotation marks omitted).  LiveRamp relies principally on a

13   recent case from the Northern District of Illinois:  *Shenzhen Aji Fashion Tech. Co. v. WhaleCo*

14   *Inc.*, No. 23-cv-14043, 2024 WL 2845974, at *1 (N.D. Ill. June 5, 2024).  However, as explained

15   below, *Shenzhen* is different in a number of ways from this case.  The Court is not persuaded that,

16   under the circumstances of this case, the combination of LiveRamp's website and its contract with

17   Circana is sufficient to satisfy personal jurisdiction.

18        In *Shenzhen*, defendant WhaleCo, Inc. ("WhaleCo"), "own[ed] and operate[d] the online

19   marketplace[] Temu.com," with four other defendants being "individual online sellers operating

20   on Temu.com … (the 'Store Defendants')."  *Shenzhen*, 2024 WL 2845974, at *1.  WhaleCo was

21   based in Boston, Massachusetts, but the plaintiff originally brought suit in Illinois because the

22   Store Defendants, although based in China, had each shipped infringing products into Illinois.  *Id.*

23   at *2.  WhaleCo moved to transfer the case from Illinois to the District of Massachusetts.  *Id.* at

24   *1.  In determining that personal jurisdiction over the Store Defendants was satisfied in

25   Massachusetts, the court explained that

26            Store Defendants did not just create websites on their own initiative
             that can be accessed in any location, they specifically entered into an
27            agreement with WhaleCo, a Massachusetts-based company, to sell
             products throughout the United States, including for potential sale in
28            Massachusetts, using WhaleCo's e-commerce platform.  Further, the

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

> Store Defendants did not contract with WhaleCo for a one time sale of goods or services, but instead, according to Shenzhen's own allegations, are engaged in an ongoing relationship with WhaleCo in which **WhaleCo controls the media and images that appears on the Store Defendants' product listings, sets the prices their products are sold at, and decides where the products are sold. WhaleCo and the Store Defendants are also, according to Shenzhen, purportedly "acting in concert" to use Shenzhen's trademark and copyrighted images to offer and sell clothing products that infringe upon Shenzhen's intellectual property. Thus, there is "something more" in this case than the mere availability of a website or the mere existence of a contractual relationship; there is an ongoing relationship with various specific terms and conditions, and an ongoing alleged scheme of copyright infringement**.

*Id.* at \*5 (citations omitted; emphasis supplied). But there are a few key differences between this case and *Shenzhen*.

Most significantly, the relationship between the defendants in *Shenzhen* was much closer than between LiveRamp and Circana. WhaleCo controlled key aspects of Store Defendants' websites; specifically, it determined media and images, set prices and decided where products were sold. *Id.* In essence, WhaleCo—the Massachusetts-based company—controlled the Store Defendant's alleged copyright infringement. Here, LiveRamp points to Nielsen's allegation that "Circana and LiveRamp collaborate to make Circana's deterministic data available within LiveRamp's data platform," (Reply at 5), but this single, general allegation of collaboration is a far cry from the near-total control exerted by WhaleCo in *Shenzhen*. The Court is not persuaded that the "collaborat[ion]" alleged here is sufficient to say that LiveRamp "expressly aimed" its conduct at Illinois.

Furthermore, in *Shenzhen*, the defendant operating the online marketplace (WhaleCo) was based in the target forum, and the question was whether the Store Defendants that "supply WhaleCo with products for sale" could be sued in the same forum. *See id.* at \*2. The situation here is reversed: LiveRamp is the party that ultimately makes the product (data) available to customers, and one of its suppliers (Circana) is headquartered in the target forum. *See* Compl., ¶ 12; *Circana* Am. Compl., ¶ 42. If LiveRamp's argument were correct, then, so long as the other jurisdictional requirements were satisfied, *any* online retailer could be made to answer in the courts of *any* state in which it had a supplier (and LiveRamp itself could be sued in any state in

7

which any of its data providers resided).  This Court rejects the argument that merely having a nationwide website means that conduct is "expressly aimed" at any states in which the defendant's supplier(s) reside.  Nor has LiveRamp provided any evidence that it has any customers in Illinois to whom it makes Circana's data available.

Accordingly, this case is quite different from *Shenzhen*.  Rather, this is a case where LiveRamp operates a nationwide website and has a contract with its third-party data supplier, Circana, who it just-so-happens is situated in Illinois.  For specific personal jurisdiction to obtain, "[t]he defendant's contacts must not be merely random, fortuitous, or attenuated." *Citadel Grp.*, 536 F.3d at 761;  *Picot*, 780 F.3d 1206 at 1212 ("Merely random, fortuitous, or attenuated contacts are not sufficient."  (internal quotation marks and citation omitted).  In this context, the Court does not find that LiveRamp's conduct was "expressly aimed" at Illinois.

### 2.   LiveRamp Has Not Shown It Knew That the Effects of its Conduct Were Likely to be Felt—*i.e.*, that Nielsen Would Be Injured—in Illinois

The lack of "expressly aimed" conduct alone is sufficient to find a lack of personal jurisdiction and so deny the Motion.  *See Tamburo*, 601 F.3d 693 at 703;  *Pebble Beach Co.*, 453 F.3d at 1156.  Nonetheless, for the sake of completeness, this Court briefly addresses the third requirement:  that the "defendant [have] knowledge that the effects would be felt—that is, the plaintiff would be injured—in the forum state." *Tamburo*, 601 F.3d 693 at 703;  *accord Pebble Beach Co.*, 453 F.3d at 1156.

LiveRamp does not address this element in its briefs, although Nielsen argued in its opposition that there was no evidence that "the contract was made with LiveRamp's knowledge that Nielsen[] would be harmed in Illinois… ."  Opp. at 7.  However, both Parties addressed the issue during oral argument where LiveRamp argued that because Nielsen was a Chicago-based company, LiveRamp knew that the effects of its deal with Circana would be felt by the plaintiff (Nielsen) in Illinois.  But while this may be apparent to LiveRamp now, Section 1404(a) is backward looking. *See* 28 U.S.C. § 1404(a) (permitting transfer to any district where the action "might have been brought" originally).  While it is possible that, as LiveRamp argues, it made its contract with Circana while knowing that Circana was a competitor of Nielsen and thus that

United States District Court
Northern District of California

1  Nielsen would feel the effects of the (alleged) tort, neither the contract between LiveRamp and

2  Circana nor any affidavit providing evidence of the circumstances under which it was made is

3  before the Court.  "The moving party bears the burden of showing that jurisdiction and proper

4  venue would exist in the district to which a transfer is requested." *Wireless Consumers All.*, 2003

5  WL 22387598, at \*1.  The Court is not persuaded on these facts that LiveRamp has shown that it

6  knew that the effects of its conduct were likely to be felt by Nielsen in Illinois.

7      Accordingly, for this independent reason, the Northern District of Illinois lacked specific

8  personal jurisdiction over LiveRamp at the time Nielsen brought its lawsuit.  Thus, this is an

9  independent reason to deny the motion to transfer.

10  **IV.    CONCLUSION**

11      For the forgoing reasons, because LiveRamp's allegedly tortious conduct was not

12  expressly aimed at Illinois and was not conducted with the knowledge that Nielsen was likely to

13  be injured in Illinois, this Court finds that the Northern District of Illinois lacked specific personal

14  jurisdiction over LiveRamp at the time Nielsen brought its lawsuit.  Accordingly, because personal

15  jurisdiction is a threshold issue under 28 U.S.C. § 1404(a), without reaching the case-specific

16  analysis of convenience and fairness, the Court **DENIES** LiveRamp's motion to transfer this case

17  to the Northern District of Illinois.

18

19      **SO ORDERED.**

20  Dated: June 6, 2025

21

22

23  SUSAN VAN KEULEN
    United States Magistrate Judge

24

25

26

27

28

9